# EXHIBIT A: COMPLAINT

SUPERIOR COURT FOR THE STATE OF WASHINGTON
FOR KING COUNTY

HELEN DEBESAY, an individual,

    Plaintiff,

v.

SECURITY INDUSTRY SPECIALISTS, INC., a Washington Corporation,

    Defendant.

NO.

COMPLAINT FOR DAMAGES

## I. INTRODUCTION

1.1 Plaintiff Helen Debesay ("Plaintiff") hereby sets forth her complaint against Defendant Security Industry Specialists, Inc. ("Defendant" or "SIS"), for failure to accommodate a disability in violation of the Washington Law Against Discrimination (WLAD), Ch. 49.60 RCW; and violations of the Washington Family Leave Act (WFLA), Ch. 49.78 RCW and the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601, *et seq.*

## II. PARTIES

2.1 Plaintiff is an individual residing in Snohomish County, Washington.

2.2 At all times relevant hereto, Plaintiff was an employee of Defendant SIS at its location in King County, Washington.

2.3 Defendant SIS is a Washington Corporation existing under the laws of Washington State and transacting business in King County.

COMPLAINT FOR DAMAGES - 1

**HKM EMPLOYMENT ATTORNEYS LLP**
600 Stewart Street, Suite 901
Seattle, Washington 98101
(206) 838-2504

2.4 At all times relevant hereto, Defendant employed Plaintiff.

2.5 Defendant is an "employer" subject to statutes governing employment in the State of Washington, including Ch. 49.12 RCW, Ch. 49.60 RCW, Ch. 49.78 RCW, and 29 U.S.C. §2601.

### III.   JURISDICTION AND VENUE

3.1 Acts complained of herein occurred in the State of Washington.

3.2 At all times material to this action, Defendant transacted business within King County.

3.3 This action has been filed within the applicable statutory time periods.

3.4 Jurisdiction is proper in this court under RCW 2.08.010.

3.5 Venue is proper in this court under RCW 4.12.025 because Defendant presently transacts business in King County and transacted business in King County at the time Plaintiff's causes of action arose.

### IV.   FACTUAL BACKGROUND

4.1 Plaintiff was hired by Defendant around May 2016.

4.2 Ms. Debesay was originally diagnosed with the autoimmune disease, rheumatoid arthritis (RA) in December 2015.

4.3 Ms. Debesay initially responded well to her prescribed treatment.

4.4 In late 2018 Ms. Debesay had a significant flare up of RA symptoms which affected her ability to move and work.

4.5 Every couple of weeks Ms. Debesay would receive medication through infusion. The medication helped her most days, but unpredictably she would wake up unable to lift herself out of bed.

4.6     On days when Ms. Debesay was experiencing these especially severe symptoms, she took another medication. However, Ms. Debesay has no way of telling how long it will take the additional medication to begin working, and it sometimes takes up to twenty-four hours.

4.7     In addition, Ms. Debesay cannot predict when she will need to take the supplemental medication. Therefore, after taking the medication Ms. Debesay is forced to simply wait at home until she begins to feel better.

4.8     On the days Ms. Debesay woke up experiencing incapacitating symptoms, she called her supervisor and advised him that she was unable to work that day and would have to take a sick day.

4.9     Because these episodes of incapacitation were only known to Ms. Debesay as of the morning of her shift, she was unable to provide 24 hours' notice to her employer of her need to be absent.

4.10    Defendant told Ms. Debesay that she did not have any accumulated PTO and therefore her absences were unexcused.

4.11    Ms. Debesay requested that an exception to the policy be made as an accommodation so that her RA-related absences would not be counted as unexcused, but Defendant refused to do so.

4.12    Ms. Debesay did not know what to do. She wanted to be at work, but during a particularly bad flare up, she was physically incapable of working.

4.13    In an effort to excuse her absences, Ms. Debesay brought Defendant a note from her doctor whenever she had to call into work sick, but Defendant told her the notes did not matter—her absences were still unexcused.

COMPLAINT FOR DAMAGES - 3

4.14    Defendant offered no accommodations or suggestions, and no one engaged with her to discuss any options about how to accommodate her disability so that she could continue to successfully perform her job.

4.15    It was not until speaking with a co-worker that Ms. Debesay learned of FMLA.

4.16    Ms. Debesay applied for FMLA and was approved on February 12, 2019.

4.17    Ms. Debesay received intermittent FMLA leave, in accordance with her needs.

4.18    It was clearly noted on Ms. Debesay's FMLA paperwork that all leave taken for her RA was to be designated as FMLA leave.

4.19    On February 14, 2019, Ms. Debesay's supervisor called her to reprimand her for her absences. Ms. Debesay informed him that her FMLA had been approved and sent him a copy of the paperwork.

4.20    However, at the end of the phone call, despite being informed of Ms. Debesay's right to protected leave, the supervisor again told her to "watch her absences."

4.21    Ms. Debesay took her supervisors comments as a clear indication that she would be disciplined for utilizing her FMLA leave.

4.22    Ms. Debesay utilized her FMLA leave eight times in February and March.

4.23    During that time, Defendant regularly chastised Ms. Debesay for her absences and told her she needed to "watch them."

4.24    Ms. Debesay was forced to repeatedly explain her disability to supervisors who continued to harass her for utilizing her FMLA leave.

4.25    Around the end of March, one of Ms. Debesay's co-workers pointed out to her that she had been taken off the schedule. The co-worker asked what happened and if she was not working there anymore.

4.26 Ms. Debesay had no idea what the co-worker was talking about and became immediately worried.

4.27 Ms. Debesay logged on to the company app and saw that one of her managers, Jerimiah Hobbs, had sent her a sad face emoji.

4.28 Ms. Debesay then received an email from Christian Binkley telling her to go into the corporate office. All of Ms. Debesay's supervisors were cc'ed in on the email.

4.29 No one would tell Ms. Debesay what was going on. The most information she received before going to the corporate office was the cryptic sad face emoji.

4.30 Ms. Debesay knew that Mr. Binkley was aware of and had a copy of her FMLA paperwork but realized based on Defendant's past conduct, that they may still be terminating her for her protected absences.

4.31 When Ms. Debesay was officially fired, Defendant told her that she was terminated for her absences.

4.32 On Ms. Debesay's separation notice from the company, Defendant listed all of Ms. Debesay's FMLA protected absences as the sole reason for her termination.

4.33 Ms. Debesay's termination has caused her and her family an incredible financial hardship, particularly due to the loss of her much-needed health benefits. Losing her benefits also has prevented Ms. Debesay from receiving adequate care and treatment for her serious medical condition.

4.34 In addition, Ms. Debesay's termination also has caused her severe emotional distress.

## V.   CAUSES OF ACTION

**COUNT ONE - INTERFERENCE WITH THE FAMILY AND MEDICAL LEAVE ACT, 29 U.S.C. § 2601, *et seq.*, AND THE WASHINGTON FAMILY LEAVE ACT, RCW 49.78 *et seq*.**

5.1   Plaintiff realleges paragraphs 1.1 through 4.34 of the Complaint and hereby incorporates the same by reference.

5.2   Plaintiff has a serious health condition that made her intermittently unable to perform the functions of her position.

5.3   Plaintiff requested protected leave under the FMLA and WFLA.

5.4   Plaintiff was eligible for protected leave under FMLA and WFLA.

5.5   Defendant is an employer under the FMLA and WFLA.

5.6   Plaintiff was entitled to benefits under the FMLA and WFLA.

5.7   Plaintiff gave Defendant notice of her intention to take leave.

5.8   Plaintiff advised Defendant as soon as practicable on days that she would need to take intermittent leave.

5.9   Plaintiff's need for her own medical leave was not foreseeable based on planned medical treatment.

5.10   At the time of her termination, Plaintiff had remaining days available to use under the FMLA and WFLA.

5.11   By terminating Plaintiff, Defendant illegitimately prevented Plaintiff from using her benefits under FMLA and WFLA.

5.12   As a result of Defendant's conduct, Plaintiff is entitled to her salary, employment benefits, and other compensation denied or lost by reason of the violation; interest; liquidated damages; and reasonable attorneys' fees and costs.

**COUNT TWO – FAILURE TO REASONABLY ACCOMMODATE A DISABILITY IN VIOLATION OF THE WASHINGTON LAW AGAINST DISCRIMINATION (WLAD), RCW 49.60** *et seq.*

5.13    Plaintiff realleges paragraphs 1.1 through 5.12 of the Complaint and hereby incorporates the same by reference.

5.14    Plaintiff had a medically recognized and diagnosed condition.

5.15    Plaintiff gave her employer notice of her condition.

5.16    Plaintiff's impairment had a substantially limiting effect on her ability to perform her job.

5.17    Plaintiff would have been able to perform the essential functions of her job with a reasonable accommodation.

5.18    Defendant's failure to even attempt to reasonably accommodate Plaintiff for her impairment violates Washington law, including RCW 49.60.030, 49.60.040, and 49.60.180, for which Plaintiff is entitled to compensatory damages, back pay and front pay, attorneys' fees, and costs.

5.19    As a result of Defendant's wrongful conduct, Plaintiff has suffered damages in amounts to be proven at trial and is entitled to compensatory damages, back pay and front pay, emotional distress damages, and attorneys' fees and costs.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

A.    Damages for back pay, front pay, lost benefits, and medical expenses in an amount to be proved at trial;

B.    Damages for loss of enjoyment of life, pain and suffering, mental anguish, emotional distress, and humiliation;

C.    Prejudgment interest in an amount to be proved at trial;

D. Compensation for any tax penalty associated with recovery;

E. Prejudgment and post-judgment interest at the statutorily prescribed rate;

F. Reasonable attorney's fees and costs;

G. Liquidated damages; and

H. Whatever further and additional relief the Court deems just and equitable.

DATED this 12th day of May, 2020.

*/s/ Rachel M. Emens*
Jason A. Rittereiser, WSBA No. 43628
Rachel M. Emens, WSBA No. 49047
Henry Brudney, WSBA No. 52602
**HKM EMPLOYMENT ATTORNEYS LLP**
600 Stewart Street, Suite 901
Seattle, WA 98101
Phone: (206) 838-2504
Fax:     (206) 260-3055
Email: jrittereiser@hkm.com
           remens@hkm.com
           hbrudney@hkm.com

*Attorneys for Plaintiff Helen Debesay*